James A. Mollet v. City of Greenfield

2:16-CV-01145-LA

Transcript of the Testimony of:

# Shawn Hammernik

February 15, 2018



800.899.7222 • www.GramannReporting.com

MILWAUKEE  414.272.7878 • FAX: 414.272.1806 • 740 North Plankinton Ave, Suite 400, Milwaukee, WI 53203

MADISON  608.268.0435 • FAX: 608.268.0437 • 14 West Mifflin Street, Suite 311, Madison, WI 53703

1              IN THE UNITED STATES DISTRICT COURT

2                 EASTERN DISTRICT OF WISCONSIN

3    ----------------------------------------------------

4    JAMES A. MOLLET,

5                    Plaintiff,

6        -vs-                      Case No. 2:16-CV-01145-LA

7    CITY OF GREENFIELD,

8                    Defendant.

9    ----------------------------------------------------

10

11

12              Deposition of SHAWN HAMMERNIK

13              Thursday, February 15, 2018

14                    4:33 p.m.

15                       at

16              CRIVELLO CARLSON, S.C.
            710 North Plankinton Avenue, Suite 500
17                 Milwaukee, Wisconsin

18

19

20

21

22        Reported by Lindsay DeWaide, RMR, CRR

23

24

25

1          Deposition of SHAWN HAMMERNIK, a witness in

2     the above-entitled action, taken at the instance of the

3     Plaintiff, pursuant to the Federal Rules of Civil

4     Procedure, before Lindsay DeWaide, Registered Merit

5     Reporter, Certified Realtime Reporter, and Notary

6     Public in and for the State of Wisconsin, at CRIVELLO

7     CARLSON, S.C., 710 North Plankinton Avenue, Suite 500,

8     Milwaukee, Wisconsin, on the 15th day of February,

9     2018, commencing at 4:33 p.m. and concluding at

10    4:57 p.m.

11

12    A P P E A R A N C E S:

13         LAW OFFICE OF ARTHUR HEITZER, by
               Ms. Brenda Lewison
14             633 West Wisconsin Avenue, Suite 1410
               Milwaukee, Wisconsin 53203
15             Appeared on behalf of Plaintiff.

16         CRIVELLO CARLSON, S.C., by
               Mr. William W. Ehrke
17             710 North Plankinton Avenue, Suite 500
               Milwaukee, Wisconsin 53203
18             Appeared on behalf of Defendant.

19

20

21    ALSO PRESENT:  Jon Cohn
                      James Mollet
22

23

24

25

*Gramann Reporting, Ltd.*                              *(800) 899-7222*

1                    E X A M I N A T I O N

2                                                      PAGE

3   BY MS. LEWISON                                      4

4   BY MR. EHRKE                                        19

5   BY MS. LEWISON                                      21

6   BY MR. EHRKE                                        21

7

8                      E X H I B I T S

9                 (No exhibits were marked.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 2:16-cv-01145-LA   Filed 03/29/18   Page 4 of 27   Document 21

1              TRANSCRIPT OF PROCEEDINGS

2                    SHAWN HAMMERNIK, called as a witness

3         herein, having been first duly sworn on oath,

4         was examined and testified as follows:

5                    E X A M I N A T I O N

6    BY MS. LEWISON:

7    Q    Can you please state and spell your name,

8         please.

9    A    My name is Shawn Hammernik, S-H-A-W-N,

10        H-A-M-M-E-R-N-I-K.

11   Q    And, Mr. Hammernik, where did you graduate high

12        school?

13   A    Thomas More High School.

14   Q    Where is that?

15   A    St. Francis.

16   Q    And did you obtain any education after high

17        school?

18   A    I have an associate's degree from Milwaukee Area

19        Technical College in fire science.

20   Q    And when did you obtain that?

21   A    I don't remember.  Somewhere in the late '90s.

22   Q    All right, then.  And did you obtain any degrees

23        past that?

24   A    No.

25   Q    And what was your first position as a

```
 1          firefighter or emergency medical technologist?
 2   A    I was hired as a firefighter/EMT on February 17,
 3          1997.
 4   Q    Where?
 5   A    In the city of Greenfield.  Oh.  My very first
 6          one?  Okay.  Very first job was as a paid
 7          on-call firefighter for the City of Franklin.
 8                  MR. EHRKE:  Take your time.  Don't
 9          rush.
10   BY MS. LEWISON:
11   Q    And do you remember when you started and when
12          you ended that?
13   A    No.
14   Q    And so you told me already and now I've
15          forgotten already.  Could you tell me when you
16          started with the City of Greenfield?
17   A    Well, after the City of Franklin, then I worked
18          for the City of West Bend full-time for three
19          months.
20   Q    Okay.
21   A    That I started in November of '96.
22   Q    Okay.
23   A    Then I left West Bend and went to Greenfield and
24          started February 17th.
25   Q    1997?
```

```
 1    A    Yes.

 2    Q    And you've been with Greenfield ever since?

 3    A    Correct.

 4    Q    Do you also have a second job?

 5    A    I do.

 6    Q    And where do you work?

 7    A    I work at Milwaukee Area Technical College as a

 8         part-time fire instructor.

 9    Q    You are a battalion chief; is that correct?

10    A    Correct.

11    Q    You went up through the ranks starting as a

12         firefighter, lieutenant, and then you were the

13         deputy chief for a while; correct?

14    A    I was lieutenant -- or I was a firefighter, then

15         I was a paramedic, then I was a lieutenant.  Or

16         no.  Then I went back to firefighter,

17         lieutenant, and deputy chief.

18    Q    And when did you move to the battalion chief

19         position?

20    A    When Chief Spahn retired and the new chief --

21         when Chief Cohn was appointed, then we

22         basically -- my spot was eliminated as deputy

23         chief.  There was no longer going to be a deputy

24         chief spot, so I went back to shift as a

25         battalion chief.  I don't remember the year.
```

1   Q   And what shift is it that you run?

2   A   I run A shift.

3   Q   Now, Mr. Hammernik, is it true that it's not

4       uncommon for you to leave before the 8:00 a.m.

5       end of your shift because you have childcare

6       responsibilities?

7   A   During what time frame are we talking?

8   Q   Oh, I'm sorry.  Back when Mr. Mollet was still

9       with the City of Greenfield.

10  A   It's possible.

11  Q   Did you have to -- you have children, I take it?

12  A   Yes.

13  Q   Girl?  Boy?

14  A   I have four total now, but at that point I had

15      three.  Two boys and a girl.

16  Q   So did you have to go home and take care of a

17      child or children while your significant other

18      went off to work?

19  A   Well, we weren't together, so we were split

20      houses, split household.  So we coparented

21      between two houses, so I'm sure at times there

22      were times where I had to leave work or take off

23      time to do childcare.

24  Q   And are there also times when you flex your time

25      so that you can go and teach at MATC?

```
 1   A    Um-hum.  Correct.

 2   Q    I'd like you to take a look at what's been

 3        marked as Exhibit No. 7.  What is that?

 4   A    That's a picture of bedding, a flag, and then a

 5        nameplate.

 6   Q    Did you take that photograph?

 7   A    I don't know who took the photograph.  I don't

 8        recall if I did or if somebody else did.

 9   Q    It was at one time on your phone; correct?

10   A    Yes.  I did have possession of it at one time.

11   Q    Did you share that photo with anybody?

12   A    I don't recall.

13   Q    Well, did Assistant Chief Weber ask you for a

14        copy of that photograph at some point?

15   A    I'm not 100 percent sure, to be honest.  It was

16        a long time ago.

17   Q    All right.  Where is that general area where the

18        photograph is -- what is the photograph

19        depicting?

20   A    This would be immediately to the right of -- we

21        have service flags and members' names with the

22        years that they served in different military

23        branches on the apparatus floor, Station 1.

24   Q    I'm sorry.  What was that?

25   A    It's on the apparatus floor at Station 1.
```

1   Q   So service flags and the years that they served.

2       Are you talking about military service?

3   A   Correct.  Military branches.

4   Q   So is this related to current firefighters?

5   A   It was anybody who had military service that

6       worked for our city, either past or current,

7       that were up there.  So some people who are

8       currently employed are up there, and a lot of

9       our retirees for what years they served are up

10      there.

11  Q   But only for firefighting staff; right?  Not the

12      whole City?

13  A   No.  Just fire personnel.

14  Q   Are you aware of who printed the flag that

15      says -- and then where it says underneath

16      "Border Patrol," are you aware of who printed

17      that document?

18  A   I don't recall who printed it.

19  Q   Do you recall, might it have been you?

20  A   I really don't remember who printed it.  I know

21      it was printed on the color printer, which is in

22      the battalion chief's office, but I really don't

23      recall who printed it.

24  Q   Did you put those two documents on the wall?

25  A   No.

```
 1   Q    So you didn't put -- and I'm sorry.  Our record

 2        is not going to be very clear here.  By the two

 3        documents, I'm referring to the two documents

 4        that are contained in Exhibit 7.  And you didn't

 5        put either of those on the wall?

 6   A    No.

 7   Q    Do you know who did?

 8   A    Some of my personnel who were working that day.

 9        I don't know the specific names.  I'd have to

10        look at records.  There's a lot of guys who were

11        working that day.

12   Q    So there was a Greg Holz, a Curtis Johnson, and

13        a Dave Stabbe who were working that day.  Do you

14        know --

15   A    Well, there would have been more than that --

16                MR. EHRKE:  Just let her finish her

17        question.

18   BY MS. LEWISON:

19   Q    Do you know whether any of those three put those

20        two documents on the wall as depicted in

21        Exhibit No. 7?

22   A    I don't know.

23   Q    And Mr. Holz, Mr. Johnson, and Mr. Stabbe all

24        received verbal counseling related to this

25        Cesar Hernandez incident; correct?
```

 1                    MR. EHRKE:  Objection.  Lack of

 2        foundation.

 3                    If you know.

 4                    THE WITNESS:  I don't know if they did

 5        for sure.  I'm assuming that they did, to at

 6        least answer the question, but I don't know.

 7    BY MS. LEWISON:

 8    Q    Do you know if those three would have been

 9        working that day?

10    A    Without looking at the calendar for that day, I

11        can't give you a 100 percent accurate response.

12    Q    I'd like you to look at what's been marked

13        Exhibit No. 8.

14    A    Okay.

15    Q    Exhibit No. 8 is the written record of

16        discipline that you received for this event;

17        correct?

18    A    Yes.

19    Q    Now, you came forward and took responsibility

20        for what had happened because it happened on

21        your watch, so to speak?

22    A    Correct.  Yes.

23    Q    Did you agree that it was inappropriate conduct?

24    A    Yes.

25    Q    Did you take any action during that shift to

1      stop it?

2   A    No.

3   Q    You didn't ask anybody to take the laundry down?

4   A    No.

5           MR. EHRKE: I'm going to object. Lack

6      of foundation. It assumes that he may have been

7      there and may have known about it. Lack of

8      details.

9   BY MS. LEWISON:

10   Q    You were there; correct?

11   A    I believe I was working. Without a calendar,

12      we're talking a long time ago. So it would have

13      been my shift. Those are my personnel, so I

14      assume I was working; but without having the

15      calendar there and the roster that would show I

16      was working, I can't answer 100 percent.

17   Q    But you knew during the course of that shift

18      that those two documents had been put up on the

19      wall and that the sheets had been hung from

20      the -- I don't know, I guess from the ceiling;

21      right?

22   A    At some point I became aware of it. I don't

23      know if it was on that shift or if it was after

24      the shift.

25   Q    When you're on shift as a battalion chief, do

```
 1        you spend more time at one -- there are two

 2        stations; right?

 3   A    Yes.

 4   Q    And you're in charge of both of them; correct?

 5   A    Yes.

 6   Q    Do you spend more time at one station rather

 7        than the other?

 8   A    Yes.

 9   Q    Which station do you spend more time at?

10   A    The station located at 53rd and Layton,

11        Station 1.

12   Q    Station 1.  Did this occur at Station 1?

13   A    Yes.

14   Q    How is it that you could have been working at

15        Station 1 and not known about it at that time on

16        that shift?

17   A    I'm not always on the apparatus floor, and I

18        can't give you an accurate answer as to the

19        circumstances due to time.  It's been a long

20        time since it happened.

21   Q    I'm going to show you some documents that have

22        been marked Exhibits No. 24 and 25.

23               Have you seen those before?

24               MR. EHRKE:  I'm going to object to the

25        relevance and not tending to lead to admissible
```

1          evidence under the claims of this case.

2                    You can answer whether you've seen

3          them before.

4                    THE WITNESS:  I haven't seen either

5          one of these before.

6     BY MS. LEWISON:

7     Q    So you never saw either one of those in, say,

8          the kitchen area at the station?

9                    MR. EHRKE:  Objection.  Repetitive.

10         He just said he's never seen them before.

11                   You can answer again.

12                   THE WITNESS:  I haven't seen these

13         before.

14    BY MS. LEWISON:

15    Q    Had you heard that they had been posted?

16    A    No.

17    Q    You've never heard anything about these two

18         things before?

19    A    No.

20    Q    Was there a time when you were photographed with

21         a beer in hand at the station?

22    A    No.

23    Q    Was there a photograph on Facebook with you

24         holding a beer?

25                   MR. EHRKE:  I'm going to object to the

```
 1          relevance, not leading to admissible evidence.

 2                    But you can answer.

 3                    THE WITNESS:  No.

 4   BY MS. LEWISON:

 5   Q    Was there a photograph on your Facebook page

 6        related to somebody else having a beer in the

 7        station?

 8   A    No.

 9   Q    Did you ever have a conversation with

10        Chief Spahn about a photograph of you related to

11        beer in the station?

12   A    No.

13   Q    You do have a Facebook page?

14   A    Currently?

15   Q    Yes.

16   A    No.

17   Q    You've taken that --

18   A    I take it back.  I have a coaching Facebook

19        page, but I don't have friends.  It has no

20        friends.

21   Q    But if somebody does a search for your name on

22        Facebook, there is a page that comes up;

23        correct?

24   A    It would be Coach Hammernik is the only Facebook

25        page I'm aware of.  I turned my Facebook off a
```

1          long time ago.

2     Q    When did you turn it off?

3     A    I don't recall.  Years ago.

4     Q    Why did you turn it off?

5     A    There's multiple reasons.  It's a tame waster.

6          There's a lot of drama on Facebook.  Like, just

7          avoided that distraction.

8     Q    So if someone else were to say that they saw a

9          photograph on Facebook with you with a beer at

10         the station, can you provide us with any

11         explanation for how that could have occurred?

12              MR. EHRKE:  Objection.  Calls for

13         speculation.  Also assumes facts not in evidence

14         and incomplete hypothetical and lack of

15         foundation.

16              You can answer if you could explain

17         such a thing.

18              THE WITNESS:  I've never been in the

19         station with a beer in my hand ever.

20    BY MS. LEWISON:

21    Q    Do you recall making a statement to

22         Lieutenant Stabbe to the effect of "They've got

23         Mollet now"?

24    A    No.

25    Q    What's Plenty of Fish?

 1                        MR. EHRKE:  Objection.  Lack of

 2              foundation.  Vague and ambiguous.  Not tending

 3              to lead to admissible evidence.

 4                        If you can answer, go ahead.

 5                        THE WITNESS:  I believe it's a dating

 6              app.

 7      BY MS. LEWISON:

 8      Q    What's OTB?

 9                        MR. EHRKE:  Objection.  Lack of

10              foundation.

11                        If you can answer.  Don't guess.

12                        THE WITNESS:  There's multiple

13              answers.  I don't know.

14      BY MS. LEWISON:

15      Q    Okay.  I'd like you to look at Exhibit No. 14.

16              And if you can turn to the third page in that --

17              I'm sorry, the fifth page in that document.

18                        MR. EHRKE:  For the record, I'll

19              object to any reference to this document as not

20              relevant and not tending to lead to admissible

21              evidence and intending only to smear the

22              Greenfield Police Department's reputation -- or

23              fire department, unrelated to the actual claims

24              in this suit.

25                        Subject to that, you can go ahead.

1   BY MS. LEWISON:

2   Q    So it would be the fourth entry down at

3        8:37:13 a.m., you say in this WhatsApp chat "I

4        can.  Lunch at OTB."

5                  What were you referring to there?

6   A    In that reference, it would be On the Border.

7   Q    What's On the Border?

8   A    Bar/strip club located in Franklin.

9   Q    What's Mad Dog command?

10  A    That would be the name that we assumed when we

11       went to a fire incident at Mad Dog Saloon.

12  Q    Do you remember a member of the fire department

13       by the name of Joe DiRenzo?

14  A    I do.

15  Q    Do you recall saying that you gave him chest

16       pain and, as a consequence, he retired?

17  A    No.

18             MS. LEWISON:  Off the record.

19                  (Off the record.)

20  BY MS. LEWISON:

21  Q    Did you ever apply for any jobs at other fire

22       departments while you were employed by the

23       City of Greenfield?

24  A    Yes.

25  Q    Where did you apply?

 1   A      Fire department of New York.

 2   Q      When was that?

 3   A      It was post-September 11, 2001.  It would have

 4          been their first test after that.  I don't

 5          remember the year.

 6                 MS. LEWISON:  All right.  No more

 7          questions.

 8                 MR. EHRKE:  Just give me a second to

 9          see if there's anything.

10                 E X A M I N A T I O N

11   BY MR. EHRKE:

12   Q      Mr. Hammernik, counsel asked you some questions

13          about whether you put those things on the wall,

14          what you knew about it, what you knew about

15          other people that may have been involved.

16                 You were never asked specifically to

17          investigate that incident, were you?

18   A      No.

19   Q      Did Mr. Mollet in the context of his

20          investigation ever ask you any questions about

21          that incident?

22   A      No.

23   Q      He never even came to you about it, did he?

24   A      No.

25   Q      And counsel asked you about the -- what I call

```
 1        the Hernandez incident and where it occurred,

 2        and it was on your shift, and there was some

 3        question as to when and if you saw it and when.

 4                 Regardless of all those questions, you

 5        took responsibility because you were the

 6        battalion chief for that shift when that

 7        occurred; correct?

 8   A    Yes.

 9   Q    And you were punished for that, weren't you?

10   A    Yes.

11   Q    Counsel asked you earlier about whether in the

12        early days you would flex some time for family

13        reasons.

14                 When you would do that, would you

15        advise your superiors of your plan to flex so

16        they knew where you were?

17   A    Yes.

18   Q    Okay.  So at a minimum, the assistant chief or

19        the chief would know if you were going to be off

20        the premises; correct?

21   A    Yes.

22   Q    How far away from Station 1 would it be for you

23        to go home and take care of family issues?

24   A    I live on 452 East Bolivar, which I don't know

25        the mileage, but it's right by the airport.  I'm
```

1       less than 15 minutes away from the station.

2   Q    Were you available when you were at the house

3       when you did this flex type of thing?

4   A    If I would need to be, probably.

5   Q    When you had talked in response to counsel's

6       questions about shutting down Facebook, you said

7       it was a time waster and there was drama.

8            The drama you were talking about

9       didn't have anything to do with work?

10   A    No.   Just overall drama with people, everybody.

11             MR. EHRKE:   Understood.   That's all I

12       have.

13             MS. LEWISON:   One follow-up.

14           E X A M I N A T I O N

15   BY MS. LEWISON:

16   Q    When you received the discipline for the

17       Hernandez incident, you didn't actually have

18       your paycheck cut, but you did lose a day of

19       vacation time; correct?

20   A    Correct.

21             MS. LEWISON:   No more questions.

22           E X A M I N A T I O N

23   BY MR. EHRKE:

24   Q    The value of that vacation was roughly $720,

25       wasn't it, based on your hourly rate?

1              THE WITNESS:  I'd have to look at my

2         salary, but that sounds correct.

3    BY MR. EHRKE:

4    Q    $720 is a lot of money, isn't it?

5    A    Yes.

6              MR. EHRKE:  That's all I have.

7              (Deposition concluded at 4:57 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Gramann Reporting, Ltd.*                              *(800) 899-7222*

1  STATE OF WISCONSIN    )
                          )  SS:
2  COUNTY OF MILWAUKEE   )

3          I, Lindsay DeWaide, a Registered Merit

4  Reporter, Certified Realtime Reporter, and Notary

5  Public in and for the State of Wisconsin, do hereby

6  certify that the preceding deposition was reported by

7  me and reduced to writing under my personal direction.

8          I further certify that said deposition was

9  taken at CRIVELLO CARLSON, S.C., 710 North Plankinton

10 Avenue, Suite 500, Milwaukee, Wisconsin, on the 15th

11 day of February, 2018, commencing at 4:33 p.m.

12         I further certify that I am not a relative or

13 employee or attorney or counsel of any of the parties,

14 or a relative or employee of such attorney or counsel,

15 or financially interested directly or indirectly in

16 this action.

17         In witness whereof, I have hereunto set my

18 hand and affixed my seal of office at Milwaukee,

19 Wisconsin, this 28th day of February, 2018.

20

21

22                  _____
                       LINDSAY DEWAIDE, RMR, CRR
                     Notary Public, State of Wisconsin
23
   My Commission Expires: January 22, 2021.
24

25

## WORD INDEX

**< $ >**
**$720** 21:*24* 22:*4*

**< 1 >**
**1** 8:*23, 25* 13:*11, 12, 12, 15* 20:*22*
**100** 8:*15* 11:*11* 12:*16*
**11** 19:*3*
**14** 17:*15*
**1410** 2:*14*
**15** 1:*13* 21:*1*
**15th** 2:*8* 23:*10*
**17** 5:*2*
**17th** 5:*24*
**19** 3:*4*
**1997** 5:*3, 25*

**< 2 >**
**2:16-CV-01145-LA** 1:*6*
**2001** 19:*3*
**2018** 1:*13* 2:*9* 23:*11, 19*
**2021** 23:*22*
**21** 3:*5, 6*
**22** 23:*22*
**24** 13:*22*
**25** 13:*22*
**28th** 23:*19*

**< 4 >**
**4** 3:*3*
**4:33** 1:*14* 2:*9* 23:*11*
**4:57** 2:*10* 22:*7*
**452** 20:*24*

**< 5 >**
**500** 1:*16* 2:*7, 17* 23:*10*
**53203** 2:*14, 17*
**53rd** 13:*10*

**< 6 >**
**633** 2:*14*

**< 7 >**
**7** 8:*3* 10:*4, 21*
**710** 1:*16* 2:*7, 17* 23:*9*

**< 8 >**
**8** 11:*13, 15*
**8:00** 7:*4*
**8:37:13** 18:*3*

**< 9 >**
**90s** 4:*21*
**96** 5:*21*

**< A >**
**a.m** 7:*4* 18:*3*
**above-entitled** 2:*2*
**accurate** 11:*11* 13:*18*
**action** 2:*2* 11:*25* 23:*16*
**actual** 17:*23*

**admissible** 13:*25* 15:*1* 17:*3, 20*
**advise** 20:*15*
**affixed** 23:*18*
**ago** 8:*16* 12:*12* 16:*1, 3*
**agree** 11:*23*
**ahead** 17:*4, 25*
**airport** 20:*25*
**ambiguous** 17:*2*
**answer** 11:*6* 12:*16* 13:*18* 14:*2, 11* 15:*2* 16:*16* 17:*4, 11*
**answers** 17:*13*
**anybody** 8:*11* 9:*5* 12:*3*
**app** 17:*6*
**apparatus** 8:*23, 25* 13:*17*
**Appeared** 2:*15, 18*
**apply** 18:*21, 25*
**appointed** 6:*21*
**Area** 4:*18* 6:*7* 8:*17* 14:*8*
**ARTHUR** 2:*13*
**asked** 19:*12, 16, 25* 20:*11*
**Assistant** 8:*13* 20:*18*
**associate's** 4:*18*
**assume** 12:*14*
**assumed** 18:*10*
**assumes** 12:*6* 16:*13*
**assuming** 11:*5*
**attorney** 23:*13, 14*
**available** 21:*2*
**Avenue** 1:*16* 2:*7, 14, 17* 23:*10*
**avoided** 16:*7*
**aware** 9:*14, 16* 12:*22* 15:*25*

**< B >**
**back** 6:*16, 24* 7:*8* 15:*18*
**Bar** 18:*8*
**based** 21:*25*
**basically** 6:*22*
**battalion** 6:*9, 18, 25* 9:*22* 12:*25* 20:*6*
**bedding** 8:*4*
**beer** 14:*21, 24* 15:*6, 11* 16:*9, 19*
**behalf** 2:*15, 18*
**believe** 12:*11* 17:*5*
**Bend** 5:*18, 23*
**Bolivar** 20:*24*
**Border** 9:*16* 18:*6, 7*
**Boy** 7:*13*
**boys** 7:*15*
**branches** 8:*23* 9:*3*
**Brenda** 2:*13*

**< C >**
**calendar** 11:*10* 12:*11, 15*
**call** 19:*25*

**called** 4:*2*
**Calls** 16:*12*
**care** 7:*16* 20:*23*
**CARLSON** 1:*16* 2:*7, 16* 23:*9*
**Case** 1:*6* 14:*1*
**ceiling** 12:*20*
**Certified** 2:*5* 23:*4*
**certify** 23:*6, 8, 12*
**Cesar** 10:*25*
**charge** 13:*4*
**chat** 18:*3*
**chest** 18:*15*
**chief** 6:*9, 13, 17, 18, 20, 20, 21, 23, 24, 25* 8:*13* 12:*25* 15:*10* 20:*6, 18, 19*
**chief's** 9:*22*
**child** 7:*17*
**childcare** 7:*5, 23*
**children** 7:*11, 17*
**circumstances** 13:*19*
**CITY** 1:*7* 5:*5, 7, 16, 17, 18* 7:*9* 9:*6, 12* 18:*23*
**Civil** 2:*3*
**claims** 14:*1* 17:*23*
**clear** 10:*2*
**club** 18:*8*
**Coach** 15:*24*
**coaching** 15:*18*
**Cohn** 2:*21* 6:*21*
**College** 4:*19* 6:*7*
**color** 9:*21*
**comes** 15:*22*
**command** 18:*9*
**commencing** 2:*9* 23:*11*
**Commission** 23:*22*
**concluded** 22:*7*
**concluding** 2:*9*
**conduct** 11:*23*
**consequence** 18:*16*
**contained** 10:*4*
**context** 19:*19*
**conversation** 15:*9*
**coparented** 7:*20*
**copy** 8:*14*
**Correct** 6:*3, 9, 10, 13* 8:*1, 9* 9:*3* 10:*25* 11:*17, 22* 12:*10* 13:*4* 15:*23* 20:*7, 20* 21:*19, 20* 22:*2*
**counsel** 19:*12, 25* 20:*11* 23:*13, 14*
**counseling** 10:*24*
**counsel's** 21:*5*
**COUNTY** 23:*2*
**course** 12:*17*
**COURT** 1:*1*
**CRIVELLO** 1:*16* 2:*6, 16* 23:*9*
**CRR** 1:*22* 23:*22*
**current** 9:*4, 6*
**currently** 9:*8* 15:*14*
**Curtis** 10:*12*

**cut** 21:*18*

**< D >**
**dating** 17:*5*
**Dave** 10:*13*
**day** 2:*8* 10:*8, 11, 13* 11:*9, 10* 21:*18* 23:*11, 19*
**days** 20:*12*
**Defendant** 1:*8* 2:*18*
**degree** 4:*18*
**degrees** 4:*22*
**department** 17:*23* 18:*12* 19:*1*
**departments** 18:*22*
**Department's** 17:*22*
**depicted** 10:*20*
**depicting** 8:*19*
**Deposition** 1:*12* 2:*1* 22:*7* 23:*6, 8*
**deputy** 6:*13, 17, 22, 23*
**details** 12:*8*
**DeWaide** 1:*22* 2:*4* 23:*3, 22*
**different** 8:*22*
**direction** 23:*7*
**directly** 23:*15*
**DiRenzo** 18:*13*
**discipline** 11:*16* 21:*16*
**distraction** 16:*7*
**DISTRICT** 1:*1, 2*
**document** 9:*17* 17:*17, 19*
**documents** 9:*24* 10:*3, 3, 20* 12:*18* 13:*21*
**Dog** 18:*9, 11*
**drama** 16:*6* 21:*7, 8, 10*
**due** 13:*19*
**duly** 4:*3*

**< E >**
**earlier** 20:*11*
**early** 20:*12*
**East** 20:*24*
**EASTERN** 1:*2*
**education** 4:*16*
**effect** 16:*22*
**Ehrke** 2:*16* 3:*4, 6* 5:*8* 10:*16* 11:*1* 12:*5* 13:*24* 14:*9, 25* 16:*12* 17:*1, 9, 18* 19:*8, 11* 21:*11, 23* 22:*3, 6*
**either** 9:*6* 10:*5* 14:*4, 7*
**eliminated** 6:*22*
**emergency** 5:*1*
**employed** 9:*8* 18:*22*
**employee** 23:*13, 14*
**EMT** 5:*2*
**ended** 5:*12*
**entry** 18:*2*
**event** 11:*16*
**everybody** 21:*10*
**evidence** 14:*1* 15:*1* 16:*13* 17:*3, 21*
**examined** 4:*4*

**Exhibit** 8:*3* 10:*4, 21*
　11:*13, 15* 17:*15*
**exhibits** 3:*9* 13:*22*
**Expires** 23:*22*
**explain** 16:*16*
**explanation** 16:*11*

**< F >**
**Facebook** 14:*23* 15:*5,*
　*13, 18, 22, 24, 25* 16:*6, 9*
　21:*6*
**facts** 16:*13*
**family** 20:*12, 23*
**far** 20:*22*
**February** 1:*13* 2:*8* 5:*2,*
　*24* 23:*11, 19*
**Federal** 2:*3*
**fifth** 17:*17*
**financially** 23:*15*
**finish** 10:*16*
**fire** 4:*19* 6:*8* 9:*13*
　17:*23* 18:*11, 12, 21* 19:*1*
**firefighter** 5:*1, 2, 7* 6:*12,*
　*14, 16*
**firefighters** 9:*4*
**firefighting** 9:*11*
**first** 4:*3, 25* 5:*5, 6* 19:*4*
**Fish** 16:*25*
**flag** 8:*4* 9:*14*
**flags** 8:*21* 9:*1*
**flex** 7:*24* 20:*12, 15* 21:*3*
**floor** 8:*23, 25* 13:*17*
**follows** 4:*4*
**follow-up** 21:*13*
**forgotten** 5:*15*
**forward** 11:*19*
**foundation** 11:*2* 12:*6*
　16:*15* 17:*2, 10*
**four** 7:*14*
**fourth** 18:*2*
**frame** 7:*7*
**Francis** 4:*15*
**Franklin** 5:*7, 17* 18:*8*
**friends** 15:*19, 20*
**full-time** 5:*18*
**further** 23:*8, 12*

**< G >**
**general** 8:*17*
**Girl** 7:*13, 15*
**give** 11:*11* 13:*18* 19:*8*
**go** 7:*16, 25* 17:*4, 25*
　20:*23*
**going** 6:*23* 10:*2* 12:*5*
　13:*21, 24* 14:*25* 20:*19*
**graduate** 4:*11*
**GREENFIELD** 1:*7* 5:*5,*
　*16, 23* 6:*2* 7:*9* 17:*22*
　18:*23*
**Greg** 10:*12*
**guess** 12:*20* 17:*11*
**guys** 10:*10*

**< H >**
**HAMMERNIK** 1:*12*
　2:*1* 4:*2, 9, 11* 7:*3*
　15:*24* 19:*12*
**H-A-M-M-E-R-N-I-K**
　4:*10*
**hand** 14:*21* 16:*19* 23:*18*
**happened** 11:*20, 20*
　13:*20*
**heard** 14:*15, 17*
**HEITZER** 2:*13*
**hereunto** 23:*17*
**Hernandez** 10:*25* 20:*1*
　21:*17*
**high** 4:*11, 13, 16*
**hired** 5:*2*
**holding** 14:*24*
**Holz** 10:*12, 23*
**home** 7:*16* 20:*23*
**honest** 8:*15*
**hourly** 21:*25*
**house** 21:*2*
**household** 7:*20*
**houses** 7:*20, 21*
**hung** 12:*9*
**hypothetical** 16:*14*

**< I >**
**immediately** 8:*20*
**inappropriate** 11:*23*
**incident** 10:*25* 18:*11*
　19:*17, 21* 20:*1* 21:*17*
**incomplete** 16:*14*
**indirectly** 23:*15*
**instance** 2:*2*
**instructor** 6:*8*
**intending** 17:*21*
**interested** 23:*15*
**investigate** 19:*17*
**investigation** 19:*20*
**involved** 19:*15*
**issues** 20:*23*

**< J >**
**JAMES** 1:*4* 2:*21*
**January** 23:*22*
**job** 5:*6* 6:*4*
**jobs** 18:*21*
**Joe** 18:*13*
**Johnson** 10:*12, 23*
**Jon** 2:*21*

**< K >**
**kitchen** 14:*8*
**knew** 12:*17* 19:*14, 14*
　20:*16*
**know** 8:*7* 9:*20* 10:*7, 9,*
　*14, 19, 22* 11:*3, 4, 6, 8*
　12:*20, 23* 17:*13* 20:*19,*
　*24*
**known** 12:*7* 13:*15*

**< L >**
**Lack** 11:*1* 12:*5, 7*
　16:*14* 17:*1, 9*
**late** 4:*21*
**laundry** 12:*3*
**LAW** 2:*13*
**Layton** 13:*10*
**lead** 13:*25* 17:*3, 20*
**leading** 15:*1*
**leave** 7:*4, 22*
**left** 5:*23*
**Lewison** 2:*13* 3:*3, 5*
　4:*6* 5:*10* 10:*18* 11:*7*
　12:*9* 14:*6, 14* 15:*4*
　16:*20* 17:*7, 14* 18:*1, 18,*
　*20* 19:*6* 21:*13, 15, 21*
**lieutenant** 6:*12, 14, 15,*
　*17* 16:*22*
**Lindsay** 1:*22* 2:*4* 23:*3,*
　*22*
**live** 20:*24*
**located** 13:*10* 18:*8*
**long** 8:*16* 12:*12* 13:*19*
　16:*1*
**longer** 6:*23*
**look** 8:*2* 10:*10* 11:*12*
　17:*15* 22:*1*
**looking** 11:*10*
**lose** 21:*18*
**lot** 9:*8* 10:*10* 16:*6* 22:*4*
**Lunch** 18:*4*

**< M >**
**Mad** 18:*9, 11*
**making** 16:*21*
**marked** 3:*9* 8:*3* 11:*12*
　13:*22*
**MATC** 7:*25*
**medical** 5:*1*
**member** 18:*12*
**members** 8:*21*
**Merit** 2:*4* 23:*3*
**mileage** 20:*25*
**military** 8:*22* 9:*2, 3, 5*
**Milwaukee** 1:*17* 2:*8, 14,*
　*17* 4:*18* 6:*7* 23:*2, 10, 18*
**minimum** 20:*18*
**minutes** 21:*1*
**MOLLET** 1:*4* 2:*21* 7:*8*
　16:*23* 19:*19*
**money** 22:*4*
**months** 5:*19*
**move** 6:*18*
**multiple** 16:*5* 17:*12*

**< N >**
**name** 4:*7, 9* 15:*21*
　18:*10, 13*
**nameplate** 8:*5*
**names** 8:*21* 10:*9*
**need** 21:*4*

**never** 14:*7, 10, 17* 16:*18*
　19:*16, 23*
**new** 6:*20* 19:*1*
**North** 1:*16* 2:*7, 17* 23:*9*
**Notary** 2:*5* 23:*4, 22*
**November** 5:*21*

**< O >**
**oath** 4:*3*
**object** 12:*5* 13:*24*
　14:*25* 17:*19*
**Objection** 11:*1* 14:*9*
　16:*12* 17:*1, 9*
**obtain** 4:*16, 20, 22*
**occur** 13:*12*
**occurred** 16:*11* 20:*1, 7*
**OFFICE** 2:*13* 9:*22*
　23:*18*
**Oh** 5:*5* 7:*8*
**Okay** 5:*6, 20, 22* 11:*14*
　17:*15* 20:*18*
**on-call** 5:*7*
**OTB** 17:*8* 18:*4*
**overall** 21:*10*

**< P >**
**p.m** 1:*14* 2:*9, 10* 22:*7*
　23:*11*
**PAGE** 3:*2* 15:*5, 13, 19,*
　*22, 25* 17:*16, 17*
**paid** 5:*6*
**pain** 18:*16*
**paramedic** 6:*15*
**parties** 23:*13*
**part-time** 6:*8*
**Patrol,** 9:*16*
**paycheck** 21:*18*
**people** 9:*7* 19:*15* 21:*10*
**percent** 8:*15* 11:*11*
　12:*16*
**personal** 23:*7*
**personnel** 9:*13* 10:*8*
　12:*13*
**phone** 8:*9*
**photo** 8:*11*
**photograph** 8:*6, 7, 14, 18,*
　*18* 14:*23* 15:*5, 10* 16:*9*
**photographed** 14:*20*
**picture** 8:*4*
**Plaintiff** 1:*5* 2:*3, 15*
**plan** 20:*15*
**Plankinton** 1:*16* 2:*7, 17*
　23:*9*
**please** 4:*7, 8*
**Plenty** 16:*25*
**point** 7:*14* 8:*14* 12:*22*
**Police** 17:*22*
**position** 4:*25* 6:*19*
**possession** 8:*10*
**possible** 7:*10*
**posted** 14:*15*
**post-September** 19:*3*

**preceding** 23:6
**premises** 20:20
**PRESENT** 2:21
**printed** 9:14, 16, 18, 20, 21, 23
**printer** 9:21
**probably** 21:4
**Procedure** 2:4
**PROCEEDINGS** 4:1
**provide** 16:10
**Public** 2:6 23:5, 22
**punished** 20:9
**pursuant** 2:3
**put** 9:24 10:1, 5, 19 12:18 19:13

**< Q >**
**question** 10:17 11:6 20:3
**questions** 19:7, 12, 20 20:4 21:6, 21

**< R >**
**ranks** 6:11
**rate** 21:25
**really** 9:20, 22
**Realtime** 2:5 23:4
**reasons** 16:5 20:13
**recall** 8:8, 12 9:18, 19, 23 16:3, 21 18:15
**received** 10:24 11:16 21:16
**record** 10:1 11:15 17:18 18:18, 19
**records** 10:10
**reduced** 23:7
**reference** 17:19 18:6
**referring** 10:3 18:5
**Regardless** 20:4
**Registered** 2:4 23:3
**related** 9:4 10:24 15:6, 10
**relative** 23:12, 14
**relevance** 13:25 15:1
**relevant** 17:20
**remember** 4:21 5:11 6:25 9:20 18:12 19:5
**Repetitive** 14:9
**Reported** 1:22 23:6
**Reporter** 2:5, 5 23:4, 4
**reputation** 17:22
**response** 11:11 21:5
**responsibilities** 7:6
**responsibility** 11:19 20:5
**retired** 6:20 18:16
**retirees** 9:9
**right** 4:22 8:17, 20 9:11 12:21 13:2 19:6 20:25
**RMR** 1:22 23:22
**roster** 12:15

**roughly** 21:24
**Rules** 2:3
**run** 7:1, 2
**rush** 5:9

**< S >**
**S.C** 1:16 2:7, 16 23:9
**salary** 22:2
**Saloon** 18:11
**saw** 14:7 16:8 20:3
**saying** 18:15
**says** 9:15, 15
**school** 4:12, 13, 17
**science** 4:19
**seal** 23:18
**search** 15:21
**second** 6:4 19:8
**see** 19:9
**seen** 13:23 14:2, 4, 10, 12
**served** 8:22 9:1, 9
**service** 8:21 9:1, 2, 5
**set** 23:17
**share** 8:11
**SHAWN** 1:12 2:1 4:2, 9
**S-H-A-W-N** 4:9
**sheets** 12:19
**shift** 6:24 7:1, 2, 5 11:25 12:13, 17, 23, 24, 25 13:16 20:2, 6
**show** 12:15 13:21
**shutting** 21:6
**significant** 7:17
**smear** 17:21
**somebody** 8:8 15:6, 21
**sorry** 7:8 8:24 10:1 17:17
**sounds** 22:2
**Spahn** 6:20 15:10
**speak** 11:21
**specific** 10:9
**specifically** 19:16
**speculation** 16:13
**spell** 4:7
**spend** 13:1, 6, 9
**split** 7:19, 20
**spot** 6:22, 24
**SS** 23:1
**St** 4:15
**Stabbe** 10:13, 23 16:22
**staff** 9:11
**started** 5:11, 16, 21, 24
**starting** 6:11
**State** 2:6 4:7 23:1, 5, 22
**statement** 16:21
**STATES** 1:1
**Station** 8:23, 25 13:6, 9, 10, 11, 12, 12, 15 14:8, 21 15:7, 11 16:10, 19 20:22 21:1
**stations** 13:2

**stop** 12:1
**strip** 18:8
**Subject** 17:25
**suit** 17:24
**Suite** 1:16 2:7, 14, 17 23:10
**superiors** 20:15
**sure** 7:21 8:15 11:5
**sworn** 4:3

**< T >**
**Take** 5:8 7:11, 16, 22 8:2, 6 11:25 12:3 15:18 20:23
**taken** 2:2 15:17 23:9
**talked** 21:5
**talking** 7:7 9:2 12:12 21:8
**tame** 16:5
**teach** 7:25
**Technical** 4:19 6:7
**technologist** 5:1
**tell** 5:15
**tending** 13:25 17:2, 20
**test** 19:4
**testified** 4:4
**thing** 16:17 21:3
**things** 14:18 19:13
**third** 17:16
**Thomas** 4:13
**three** 5:18 7:15 10:19 11:8
**Thursday** 1:13
**time** 5:8 7:7, 23, 24 8:9, 10, 16 12:12 13:1, 6, 9, 15, 19, 20 14:20 16:1 20:12 21:7, 19
**times** 7:21, 22, 24
**told** 5:14
**total** 7:14
**TRANSCRIPT** 4:1
**true** 7:3
**turn** 16:2, 4 17:16
**turned** 15:25
**Two** 7:15, 21 9:24 10:2, 3, 20 12:18 13:1 14:17
**type** 21:3

**< U >**
**Um-hum** 8:1
**uncommon** 7:4
**underneath** 9:15
**Understood** 21:11
**UNITED** 1:1
**unrelated** 17:23

**< V >**
**vacation** 21:19, 24
**Vague** 17:2
**value** 21:24
**verbal** 10:24
**vs** 1:6

**< W >**
**wall** 9:24 10:5, 20 12:19 19:13
**waster** 16:5 21:7
**watch** 11:21
**Weber** 8:13
**Well** 5:17 7:19 8:13 10:15
**went** 5:23 6:11, 16, 24 7:18 18:11
**we're** 12:12
**West** 2:14 5:18, 23
**WhatsApp** 18:3
**whereof** 23:17
**William** 2:16
**WISCONSIN** 1:2, 17 2:6, 8, 14, 14, 17 23:1, 5, 10, 19, 22
**witness** 2:1 4:2 11:4 14:4, 12 15:3 16:18 17:5, 12 22:1 23:17
**work** 6:6, 7 7:18, 22 21:9
**worked** 5:17 9:6
**working** 10:8, 11, 13 11:9 12:11, 14, 16 13:14
**writing** 23:7
**written** 11:15

**< Y >**
**year** 6:25 19:5
**years** 8:22 9:1, 9 16:3
**York** 19:1

**Gramann Reporting, Ltd.**     *(800) 899-7222*